Hon. C. Voorhies,
Hon. A. M. Buchanan,
Hon. J. N. Lea,
Hon. H. M. Spofford,
} *Associate Justices.*

The Hon. E. T. Merrick was elected to fill the vacancy occasioned by the re-signation of the Hon. Thomas Slidell, and took his seat about the latter end of July. The Hon. J. N. Lea was elected to fill the vacancy occasioned by the resignation of the Hon. A. N. Ogden, and took his seat about the middle of July.

10 485
45 483

### L. Tanner v. R. King.

The legal interruption of prescription spoken of in Articles 8484 and 8516 of the Civil Code takes place only when the debtor has been *cited.*

An exception that all the joint co-obligors were not joined must be plead *in limine litis.*

Where the obligation is nominally joint, but the evidence shows that one party is surety to the other, there is no necessity to make them both parties to the suit.

The objection that the security to an appeal bond is a non-resident of the parish must be made in the lower court. A cause will not be remanded that evidence may be taken as to the sufficiency of the security where no effort was made in the court of the first instance to test the sufficiency.

APPEAL from the District Court of Caldwell, *Barry,* J. *Hendrey,* for plaintiff and appellant. *McGuire & Ray,* for defendant.

Buchanan, J. Suit for one-half of the amount of two joint obligations, sub-scribed by the defendant and another person in favor of plaintiff.

Defence: Prescription of five years; that the other joint obligor was not made party defendant to this action; and want of consideration, the said obligations having been obtained through fraudulent misrepresentations and concealment of facts on the part of plaintiff.

Of the two obligations sued upon, one is negotiable in its form, and the other not negotiable. Both matured in January, 1832. As the law stood at the time this action was brought, the prescription of five years, pleaded by defendant,

only applied to the negotiable instrument. In reference to that plea, the record shows that plaintiff brought suit upon these obligations against the defendant in the parish of Terrebonne, where the defendant had a plantation. Citation was issued in that suit on the 30th May, 1834, and served on defendant's overseer on the 2d June, 1834. Judgment by default was confirmed and made final against defendant in that suit on the 20th September, 1834. When execution was issued upon the judgment, the defendant enjoined it, on the ground that he had not been legally cited, his domicil being in Ouachita parish. The Supreme Court, on appeal, sustained this view of the case, and perpetuated the injunction. 11 L. R., 175. Prescription cannot be considered as *interrupted by the suit in question.* The legal interruption, spoken of in Articles 3484 and 3516 of the Code, takes place only when the debtor has been *cited.*

Had defendant's legal domicil or residence been in Terrebonne, the service on his overseer, in his absence, would have been binding upon him. But under the circumstances it was not. The plea of prescription must therefore be maintained as to the negotiable note. *As to the other obligation sued upon, the only prescription applicable is that of ten years,* which, of course, was not acquired when the citation in the present case was served, in September, 1839.

The next matter to be examined is the exception that the other joint obligor, *Caleb C. King,* was not joined in this suit. Had this exception been tried *in limine litis,* it is probable that it must have prevailed. But in the progress of this almost *interminable litigation, much evidence has been* introduced, by the defendant especially, which has relieved us of the necessity of rendering useless all the labor and expense which has been incurred in enforcing the payment of an obligation now twenty-three years past due. It is admitted that *Caleb C. King* died before the institution of this suit, in the parish of Terrebonne, where his succession is opened. The defendant is his administrator. It is not shown who are his heirs, or that he left any nearer relative than the defendant, who was his brother. But were *Caleb C. King* living, it appears that an action might have been maintained against *Richard King* for the whole amount of these obligations. Although nominally joint obligors, the evidence above referred to shows clearly that *C. C. King* was surety to plaintiff for the payment by *R. King* of a debt originally incurred by the latter. 9 Rob., 112; 6 An., 423; 7 An., 640.

We find nothing in the record to justify in the least any of the sweeping charges of fraud and malpractice contained in defendant's answer. Numerous interrogatories to plaintiff, touching these charges, are appended to defendant's answer. But no effort was made to procure answers to those interrogatories. They were never served on plaintiff, who lived in a distant parish; and only nine years after his death, at the trial of the cause, was an application made to take them for confessed. This application was properly rejected.

There is a motion to dismiss the appeal, on the ground that the security in the appeal bond is not a resident of the parish in which the bond was given. This involves a question of fact, which cannot be tried in this court; and we see no reason for remanding the cause to the District Court, in order that evidence may be taken on this point. The party appellee might have addressed himself to the court of the first instance, to test the sufficiency or legal qualifications of the surety on the appeal bond. There are numerous precedents for that proceeding. One directly in point will be found in 2 Rob., 449, though we do not wish to be understood as approving the ruling of the court on the re-hearing of that case, at page 452 of the same volume.

As the petition only claims at the hands of defendant one-half of each of the obligations set forth therein, and as we have sustained the plea of prescription in relation to the negotiable promissory note, our judgment must be restricted to the one half of the other obligation, or receipt for assignment of judgment against *King* and *Bowie*.

It is therefore adjudged and decreed that the judgment of the District Court be reversed, and th it the widow and heirs of *Lemuel Tanner* recover of *Richard King* two hundred and sixty-six dollars and twenty-five cents, with five per cent. per annum interest from the 1st of January, 1832, until paid, and costs in both courts.